UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KHOA PHAN, | )<br>) |
| Appellant, | )<br>) |
| v. | ) No. 1:17-cv-02282-SEB-TAB<br>) |
| CURRENT PUBLISHING, LLC, | )<br>) |
| Appellee. | ) |

**ORDER ON BANKRUPTCY APPEAL**

Appellant Khoa Phan ("Mr. Phan") and Appellee Current Publishing, LLC ("Current Publishing") have filed cross-appeals of an order of the Bankruptcy Court holding that Current Publishing willfully violated the automatic stay and discharge injunction and awarding Mr. Phan actual damages of $30.00 and attorney's fees of $3,160.00, for a total of $3,190.00. Both sides have appealed only the Bankruptcy Court's fee determination. For the following reasons, the Bankruptcy Court's judgment is <u>AFFIRMED</u>.

**Factual Background**

At all times relevant to this litigation, Mr. Phan owned and operated Inspirations Contemporary Furniture, a seller of high-end Scandinavian furniture. Mr. Phan advertised his business in a publication owned by Current Publishing. After falling behind on his payments to various creditors, including Current Publishing, Mr. Phan commenced a Chapter 13 bankruptcy proceeding on May 21, 2014. In November 2015,

1

Mr. Phan converted his bankruptcy to a Chapter 7 bankruptcy, and, in December 2015, added Current Publishing as a creditor.

On January 5, 2016, Current Publishing's President and Chief Executive Officer, Brian Kelly, sent an email to Mr. Phan asking if he would be "interested in trading for the balanced owed. It might be easier on all of us." Pl.'s Exh. 6. On January 8, 2016, Mr. Phan emailed Current Publishing's Office and Accounts Receivables Manager, Raquel Dowley, and notified her of his bankruptcy filing, case number, and contact information for his attorney. Ms. Dowley then contacted the office of Mr. Phan's attorney and spoke with a staff member who apparently informed Ms. Dowley that there was a "waiting period" before any debt would be discharged during which time Mr. Phan would need to fulfill certain requirements before receiving a discharge. Based on this conversation, Ms. Dowley understood there to be a chance that Mr. Phan might not receive a discharge and so she maintained his account in "active status" in Current Publishing's billing software. As a result, Mr. Phan received automated billing statements from Current Publishing on January 29, 2016 and February 29, 2016, each showing an amount due of $2,520.57.

Mr. Phan did not make any payments or otherwise contact Current Publishing in response to these billing statements. He did, however, speak with his attorney about the statements, indicating that he did not want to pursue any adversary proceedings at that time because he had not suffered any financial damages. Mr. Phan's attorney agreed to waive his fees for meeting with Mr. Phan during this period.

On March 9, 2016, the Bankruptcy Court issued an Order of Discharge, which discharged completely the debt Mr. Phan owed to Current Publishing. Ms. Dowley was

notified of the discharge on March 17, 2016, and she immediately informed Mr. Kelly that, as a result of the discharge, she would write off Mr. Phan's unpaid balance. Later that day, despite having been notified that Mr. Phan's debt had been discharged, Mr. Kelly sent an email to Mr. Phan inquiring whether Mr. Phan would be interested "in trading for the balance you owe us." Pl.'s Exh. F. Mr. Phan did not respond to Mr. Kelly's email communication nor did he make any payments or provide any goods or services to Current Publishing in response to Mr. Kelly's request.

Following the March 17 email, Mr. Phan did not receive any additional communications or automated billing statements from Current Publishing. However, neither he nor his attorney was ever contacted by Current Publishing and provided assurance that the January and February billing statements and Mr. Kelly's email were sent in error and that there would be no further collection efforts.

On March 24, 2016, Mr. Phan's attorney, John McManus, drafted and sent a demand letter to Current Publishing outlining the facts recounted above, stating that he believed Current Publishing's actions constituted a violation of the Bankruptcy Code, and offering to settle the matter for $10,000.00, an offer that Mr. Phan later reduced to $5,000.00. After receiving the demand letter, Ms. Dowley telephoned Mr. McManus's office and attempted to explain the "misunderstanding," but no one with settlement authority from Current Publishing contacted Mr. McManus at that time to discuss settlement.

On May 23, 2016, this adversary proceeding was filed, seeking redress for Current Publishing's violation of both the automatic stay and the discharge injunction. On May

3

3, 2017, the Bankruptcy Court held a trial on the adversary complaint filed by Mr. Phan. At trial, Mr. Phan testified that Current Publishing's collection efforts after the discharge left him worried that he still owed the debt, but he did not claim any financial harm stemming from his mental distress. Beyond attorney's fees, the only financial damage suffered by Mr. Phan as a result of Current Publishing's actions was approximately $30.00 spent for gas traveling between his store and his attorney's office to address this matter.

With regard to attorney's fees, Mr. McManus filed an affidavit the day before trial in which he averred that, as of May, 2017, he had expended 29 hours of time on Mr. Phan's case at an hourly rate of $395.00, totaling $11,455.00 in attorney's fees, which he agreed to reduce to $8,500.00. At trial, when asked by Current Publishing's counsel how much time he had spent on the case through March 24, 2016, the date on which the demand letter was sent, Mr. McManus testified that he had spent a total of approximately forty (40) minutes as of that date.

On June 5, 2017, the Bankruptcy Court issued findings of fact and conclusions of law following the trial, determining that Current Publishing willfully violated the automatic stay and discharge injunction when it engaged in collection efforts despite having knowledge of Mr. Phan's bankruptcy filing and subsequent discharge. The Bankruptcy court awarded Mr. Phan $30.00 in actual damages and $3,160.00 in attorney's fees (8 hours at $395.00 per hour) for a total award of $3,190.00. Both parties filed notices of appeal of the Bankruptcy Court's judgment. The only issue on appeal is whether the Bankruptcy Court's fee determination was in error.

## Legal Analysis

**I. Standard of Review**

This Court has power to review the final judgment of the United States Bankruptcy Court for the Southern District of Indiana pursuant to 28 U.S.C. § 158(a)(1). We review the legal conclusions reached by the Bankruptcy Court *de novo*. *Ojeda v. Goldberg*, 599 F.3d 712, 716 (7th Cir. 2010). The Bankruptcy Court's findings of fact are reviewed for clear error. *Id.* The Bankruptcy Court's decision whether to award damages and the amount of damages to award is reviewed for an abuse of discretion. *In re Snowden*, 769 F.3d 651, 657 (9th Cir. 2014). "If the court makes factual findings in deciding whether to award compensation or reimbursement, we review those findings under a clearly erroneous standard." *In re Kenneth Leventhal & Co.*, 19 F.3d 1174, 1177 (7th Cir. 1994).

**II. Discussion**

Neither side challenges the Bankruptcy Court's finding that Current Publishing willfully violated the automatic stay (11 U.S.C. § 362) and the discharge injunction (11 U.S.C. § 524). Accordingly, the only issue presented on appeal is whether the Bankruptcy Court abused its discretion in awarding Mr. Phan $3,160 in attorney's fees. For the following reasons, we hold that there was no abuse of discretion.

Damages for a willful violation of the automatic stay are provided for by statute. Pursuant to 11 U.S.C. §362(k)(1), "an individual injured by any willful violation of [the automatic stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." The bankruptcy court has

discretion "to determine the reasonableness of the fees and costs, but the statute requires the court to award the actual damages reasonably incurred as a result of the violation." *Johnson v. RJM Acquisitions, LLC*, No. 11-CV-601-WDS, 2012 WL 930386, at *10 (S.D. Ill. Mar. 19, 2012) (citing *In re Stainton*, 139 B.R. 232, 235 (B.A.P. 9th Cir. 1992)). "To recover actual damages for a willful violation of the stay, a debtor must show the amount of damages with reasonable certainty. … A damage award cannot be based on mere speculation, guess, or conjecture." *In re Thompson*, 426 B.R. 759, 767–68 (Bankr. N.D. Ill. 2010). "The burden of proof to show entitlement to the fees requested is on the applicant." *In re Brooks*, No. 08-72073, 2010 WL 2044933, at *3 (Bankr. C.D. Ill. May 24, 2010) (citations omitted).

In contrast to violations of the automatic stay, there is no express statutory remedy for a violation of the discharge injunction. *Ammons v. Eddy Fed. Credit Union* (*In re Ammons*), Bankr. No. 7-08-11290 SR, Adv. No. 11-1082 S, 2012 WL 1252621, at *7 (Bankr. D.N.M. Apr. 13, 2012). However, the "traditional remedy" for such a violation "lies in contempt proceedings." *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir. 2000); *see also Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915 (7th Cir. 2001) (recognizing that, because § 524(a)(2) provides that a discharge order acts as an injunction against any collection efforts, "the creditor who attempts to collect a discharged debt is violating not only a statute but also an injunction and is therefore in contempt of the bankruptcy court that issued the order of discharge"). A court may remedy a violation of the discharge injunction by awarding damages to the debtor pursuant to 11 U.S.C. § 105(a), which provides that the court may "issue any order,

process, or judgment that is necessary or appropriate to carry out" the substantive provisions of the Bankruptcy Code. *In re Bahary*, 528 B.R. 763, 769 (Bankr. N.D. Ill. 2015). In addition to damages for any actual injury suffered, a debtor may be entitled to attorney's fees "where necessary to effectuate the purposes of the discharge injunction …." *Miles v. Clarke* (*In re Miles*), 357 B.R. 446, 450 (Bankr. W.D. Ky. 2006).

Here, Mr. Phan argues that the Bankruptcy Court abused its discretion by failing to award the entire fee amount requested, despite no specific finding that any of the fees were excessive or unnecessary. Current Publishing, on the other hand, argues that it was an abuse of discretion for the Bankruptcy Court to award fees in any amount over $263.33 covering the forty minutes Plaintiff's counsel worked on this case up to the point the demand letter was sent, given the *de minimus* nature of actual damages and the fact that no further violations occurred after that date. We find neither of these arguments persuasive.

While § 362(k)(1) includes attorney's fees as part of actual damages, the statute does not provide that attorney's fees are automatically awarded in whatever amount is requested. Rather, "[n]otwithstanding the absence of the word 'reasonable' in § 362(k) …, courts making fee awards under this section apply a reasonableness standard." *Grine v. Chambers* (*In re Grine*), 439 B.R. 461, 472 (Bankr. N.D. Ohio 2010). Thus, "[a]ctual damages may be awarded under section 362(k) only if they were 'proximately caused by and reasonably incurred as a result of the violation of the automatic stay.'" *Gorokhovsky v. Ocheretner* (*In re Gorokhovsky*), Case No. 17-28901-beh, Adv. Case No. 17-2360, 2018 WL 3325716, at *4 (Bankr. E.D. Wis. July 5, 2018) (quoting *Grine*, 439 B.R. at

7

471). "The applicant bears the burden of proving its entitlement to fees …." *Williams v. Nugen* (*In re Williams*), 368 B.R. 744, 747 (Bankr. N.D. Ind. 2007) (quoting *In re Hunt's Health Care, Inc.*, 161 B.R. 971, 981 (Bankr. N.D. Ind. 1993)). "[A] fee application must provide sufficient information for a court to understand what services were actually provided and to determine whether the fees requested are reasonable and the services rendered were necessary and beneficial." *In re Gvazdinskas*, No. 08-73105, 2010 WL 1433308, at *2 (Bankr. C.D. Ill. Apr. 8, 2010). To provide this information, "the applicant must set forth a detailed statement listing each service performed, the time expended for the performance, and the fee requested for the service." *Id.*

Here, as the Bankruptcy Court noted, Mr. McManus's affidavit in support of his fee request did not itemize the time he spent on various tasks. Rather, the affidavit averred only that Mr. McManus had spent 29 hours collectively on the litigation (not including travel time and the three-hour trial) completing the following tasks: "drafted and filed an Appearance, Complaint, Joint Pretrial Statement, Final Witness and Exhibit List, attended hearing(s) including but not limited to a pretrial conference, responded to emails, made several attempts to settle the matter with opposing counsel, conducted research, drafted a trial brief, drafted findings [of] facts and conclusions of law, preparation of exhibits, and prepared [his] client as to what to expect at trial." Dkt. 12-2 at 1–2. No further detail was provided. Given Mr. McManus's failure to properly itemize his fee request, it was within the Bankruptcy Court's discretion to use its own familiarity with these types of adversary proceedings to determine that 29 hours to

8

litigate this fairly straightforward case was unreasonable and that 8 hours of legal work accurately reflected a reasonable outlay of time for the work performed.[1]

The Bankruptcy Court's fee award reduction is also in line with "well established" precedent "that legal fees awarded for a stay violation should bear a reasonable relationship to the amount in controversy." *In re Russell*, 448 B.R. 212, 218 (Bankr. N.D. Ohio 2011). Thus, "significant awards of attorney fees are rarely appropriate when the debtor has no other damages besides attorney fees." *Id.* In this case, Mr. Phan suffered only a $30.00 financial loss as a result of Current Publishing's stay and discharge violations. Given the *de minimus* nature of Mr. Phan's monetary damages, coupled with the deficiencies in Mr. McManus's fee affidavit, we cannot find that the Bankruptcy Court abused its discretion in reducing the fee award from the sum that was requested by the debtor to $3,160.00. *See, e.g.*, *In re Mitchell*, No. 08-8448-AJM-7, 2009 WL 301910 (Bankr. S.D. Ind. Feb. 5, 2009) (awarding $1,000 in attorney fees where the plaintiff suffered no financial injury as a result of the stay and the plaintiff's attorney consulted with the debtor, discussed the case with opposing counsel, drafted and filed the motion, and prepared for and attended a one-hour hearing).

Nor are we persuaded by Current Publishing's argument that the Bankruptcy Court abused its discretion by awarding Mr. Phan anything more than $263.33 in

---

[1] In his brief, Mr. Phan references the fact that Current Publishing did not object to his fee request at trial. This fact does not alter our analysis, however, as "[t]he lack of an objection to a fee request does not restrict the Court from limiting the fees sought." *In re Euromotorsport Racing, Inc.*, No. 94-04503-RLB-11, 2000 WL 33963797, at *3 (Bankr. S.D. Ind. June 13, 2000).

9

attorney's fees for the forty minutes Mr. McManus testified he spent on the case from the initiation of the stay through his drafting of the demand letter.  Current Publishing argues that because the purpose of both § 362 and § 524 is to encourage the termination of offensive conduct by a creditor and the offensive conduct in this case, to wit, continued communications from Current Publishing, ceased after it received the demand letter, legal fees incurred following preparation of that letter were unreasonable, particularly given that Mr. Phan suffered only minimal financial loss as a result of the stay and discharge violations.

However, as the Bankruptcy Court recognized, this was not a case in which the stay violation could have been remedied without the initiation of litigation by a simple telephone call to inform the creditor of the debtor's bankruptcy.  Rather, Current Publishing was aware of Mr. Phan's bankruptcy and the automatic stay and nevertheless persisted in its efforts to collect the debt not only while the stay was in place but even after it was informed that the debt had been discharged.  It is true that no further violations occurred after receipt of the demand letter, but this is clear only with the benefit of hindsight.  Because Current Publishing failed to respond to the demand letter or otherwise assure Mr. Phan or his attorney upon receipt of the demand letter that debt collection efforts would cease, Mr. Phan could not at that point be assured that he would be afforded the "post-discharge 'fresh start' intended by Congress in enacting the Bankruptcy Code." *Motichko v. Premium Asset Recovery Corp.* (*In re Motichko*), 395 B.R. 25, 29 (Bankr. N.D. Ohio 2008).

It was within the Bankruptcy Court's discretion to award attorney's fees to Mr. Phan for Current Publishing's violation of § 524 under its civil contempt power in order "to effectuate the purposes of the discharge injunction." *Ammons*, 2012 WL 1252621, at *7. While one purpose of a contempt proceeding "is designed to compel compliance with the court's orders," a second purpose "is to compensate the beneficiary of the court's order for the damages it sustained as a result of the disobedient party's failure to comply." *Williams*, 368 B.R. at 748. Here, because of Current Publishing's continued violations and failure to respond to the demand letter, the initiation of litigation was necessary to provide Mr. Phan with the "post-discharge fresh start" to which he was entitled. Under these circumstances, the Bankruptcy Court did not abuse its discretion in determining that Mr. Phan was entitled to recover attorney's fees in excess of those incurred up to and including the point at which the demand letter was sent, given that Mr. Phan was forced to incur additional attorney's fees after that point in an effort to vindicate his rights. To find otherwise would fail to assess "the costs of disobedience upon the one who was obligated to obey the order." *Id.*

For these reasons, the Bankruptcy Court was well within its discretion to award Mr. Phan $3,160.00 as reasonable attorney's fees (in addition to $30.00 for his financial loss) for Current Publishing's willful violations of the automatic stay and the discharge injunction.

## III. Conclusion

The Bankruptcy Court's June 5, 2017 judgment order in this adversary proceeding is <u>AFFIRMED</u>.  Final judgment shall enter accordingly.

IT IS SO ORDERED.

Date: ____8/23/2018____

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution to counsel of record via CM/ECF